IN THE DISTRICT COURT IN AND FOR MUSKOGEE COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| RODNEY SALLIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CJ-15-441 ) |
| GERDAU AMERISTEEL US, INC., a foreign for profit business corporation, | ) ) ) |
| Defendant. | ) ) |

## PETITION

Comes now the Plaintiff, Rodney Sallis, and he does bring this action against the Defendant, Gerdau Ameristeel US, Inc., a foreign for profit business corporation, for claims of discrimination on the basis of race (African-American) and hostile work environment in violation of Title VII of the Civil Rights Act, as amended, In support of these claims, Plaintiff would state the following:

### PARTIES

1. Rodney Sallis, an African-American male, is the Plaintiff herein. He resides in Muskogee, Muskogee County, State of Oklahoma.

2. Gerdau Ameristeel US, Inc. is a foreign for profit business corporation with a principal place of business in Muskogee, Muskogee County, State of Oklahoma with more than fifteen (15) employees.

### JURISDICTION AND VENUE

3. Jurisdiction is proper in this court pursuant to the Civil Rights Act of 1964, as amended.

4. All actions alleged herein occurred within MUSKOGEE County, Oklahoma.

5. Venue is proper in this court pursuant to 12 O.S. §131.


EXHIBIT 1

6. Plaintiff received his Right to Sue letter from the U.S. Equal Employment Opportunity Commission on or about August 18, 2015.

## FACTS

7. Rodney Sallis ("Sallis") was employed by Gerdau Ameristeel US, Inc. ("Gerdau").

8. Sallis began his employment with Gerdau on or about May 21, 2012 as a Shear Operator.

9. On or about August 27, 2014, Sallis sustained an injury to his lower back and right knee while at work at Gerdau.

10. Sallis was taken to a Gerdau company doctor by his superintendent, Ernie Franklin ("Franklin"), a Caucasian male.

11. Franklin went into the examination room with Sallis, claiming it was company policy for him to be in the examination room with Sallis.

12. The company doctor wanted to put Sallis on restrictions and prescribe pain medications to him as a result of his injury. However, Franklin told the doctor to not put Sallis on any restrictions or pain medications in order to prevent any lost time to Gerdau. Hence, Sallis was released with no restrictions and no pain medications.

13. Later Sallis discovered Franklin had lied to him about company policy requiring him to be in the examination room with him.

14. Nevertheless, on the following day, August 28, 2014 at 6:00 a.m., Sallis went to the emergency room because of continued pain. The emergency room doctor put him on pain medication with lifting restrictions and he took him off work.

15. Sallis provided Gerdau with the paperwork from his emergency room visit.

16. After providing Gerdau with his paperwork, he was told he would be fired if he didn't call

in to work everyday, despite the fact this is not Gerdau policy for work-related injury absences.

17. Sallis reported the incident with Franklin to his Supervisor Marshall Campbell ("Campbell"), white male, and to Human Resources.

18. On September 18, 2014, Sallis had another doctor's appointment. Human Resources told Franklin to not attend that appointment with Sallis. Sallis was told Campbell would be present. Nevertheless, Franklin disregarded the instructions from Human Resources and attended Sallis' doctor's appointment. The Gerdau physician put Sallis on restrictions at this appointment and also took Sallis off work.

19. After the doctor's visit, Sallis gave the paperwork from it to Franklin, who followed him outside. Franklin was very upset because the company doctor had placed Sallis on pain medication and restrictions. Franklin was raising his voice at Sallis and making comments to him like, "Look what you have done."

20. Sallis continued to walk away from Franklin and then Franklin said, "Hey, boy, you're going to talk to me weasel." He then stated, "You can go as high as you want with your complaint," in reference to my complaint to Human Resources.

21. Franklin's use of the word "boy" to Sallis, an African-American man of fifty (50) years of age, was very degrading and humiliating.

22. Later on September 18, 2014, Sallis filed a complaint with Human Resources against Franklin based on the encounter at his doctor's appointment and following it. Nothing happened to Franklin as a result of this complaint by Sallis.

23. On November 12, 2014, Monica Del Re ("Del Re"), Human Resources Manager for Gerdau,

advised Sallis that he had to comply with company policy and have a supervisor accompany him on his private doctor's visit that day. Sallis asked Del Re to provide him with written documentation showing this was company policy. She never responded to this request from Sallis.

24. On December 8, 2014, after not being allowed to attend a physician without a Gerdau supervisor being present, Sallis quit his position with Gerdau in order to maintain his medical privacy and to receive the medical treatment he needed.

25. No non-African-American employees of Gerdau were forced to have a supervisor or superintendent attend medical appointments with them following an on-the-job injury.

## FIRST CAUSE OF ACTION
## RACIAL DISCRIMINATION

Sallis realleges and incorporates herein the allegations contained in paragraphs 1 through 26 herein.

26. Sallis is an African-American male.

27. Sallis was required to have a supervisor or superintendent attend his medical appointments with him following an on-the-job injury.

28. Non-African-American employees were not required to have a supervisor or superintendent attend medical appointment with them following an on-the-job injury.

29. As a result of this discriminatory treatment, Sallis was humiliated and felt degraded.

30. As a result of this discriminatory treatment, Sallis' work environment became so hostile and outrageous that he had no choice but to resign his employment with Gerdau.

31. As a result of this racial discrimination, Sallis has lost income and benefits, incurred legal

fees and expenses, and suffered humiliation and degradation.

## SECOND CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT - HARASSMENT

Sallis realleges and incorporates herein the allegations contained in paragraphs 1 through 31 herein.

32. Sallis is a member of a protected class - African-American.

33. Sallis was subjected to insults and other verbal comments of a racial nature.

34. The conduct which Sallis was subjected to was unwelcome.

35. The conduct which Sallis was subjected was sufficiently severe and pervasive to alter the conditions of his employment and created racially abusive and hostile work environment.

36. Sallis perceived the working environment to be abusive and hostile.

37. A reasonable man in Sallis' circumstances would consider the working environment to be abusive and hostile.

38. As a result of this hostile work environment, Sallis has lost income and benefits, incurred legal fees and expenses, and suffered humiliation and degradation.

Respectfully submitted,

*Jean Walpole Coulter*
Jean Walpole Coulter, OBA #9324
Jean Walpole Coulter & Associates, Inc.
406 South Boulder, Suite 712
Tulsa, Oklahoma 74103
(918) 583-6394
(918) 583-6398 FAX
Jeancoult@aol.com